IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

PHILLIP WAYNE KOGER,

    Plaintiff,

v.

HAMILTON COUNTY, et al.,

    Defendants.

CIVIL ACTION FILE NO.
4:18-CV-0053-HLM

## ORDER

This case is before the Court on the Motion to Dismiss filed by Defendant Hamilton County, Tennessee ("Defendant Hamilton County") [61], on the Motion to Dismiss filed by Defendant Jim Hammond ("Defendant Hammond") [62], on the Motion to Dismiss filed by Defendant Brandon Bennett ("Defendant Bennett") [63], on the Motion to Dismiss filed by Defendant Jason Smith ("Defendant Smith") [64], on the

Motion to Dismiss filed by Defendants Fort Oglethorpe, Georgia ("Defendant Fort Oglethorpe") and Mike Helton ("Defendant Helton") [66], on the Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Judgment on the Pleadings filed by Defendant Catoosa County, Georgia ("Defendant Catoosa County") [70], and on the Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Judgment on the Pleadings filed by Defendant Gary Sisk ("Defendant Sisk") [71].

## I.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   When reviewing a motion to dismiss, the Court must take the allegations of

the complaint as true and must construe those allegations in the light most favorable to the plaintiff.  <u>Alvarez v. Att'y Gen. for Fla.</u>, 679 F.3d 1257, 1261 (11th Cir. 2012).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions. <u>Chandler v. Sec'y of Fla. Dep't of Transp.</u>, 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). The Court also does not accept as true "unwarranted deductions of fact[] or legal conclusions masquerading as facts." <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir. 2006) (internal quotation marks and citation omitted).

Finally, the Court may dismiss a complaint if it does not plead "sufficient factual matter, accepted as true, to

3

state a claim to relief that is plausible on its face."
Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 708
(11th Cir. 2014) (internal quotation marks omitted)
(quoting Iqbal, 556 U.S. at 678).  In Bell Atlantic Corp. v.
Twombly, 550 U.S. 544 (2007), the Supreme Court
observed that a complaint "requires more than labels and
conclusions, and a formulaic recitation of the elements of
a cause of action will not do."  550 U.S. at 555.  Although
factual allegations in a complaint need not be detailed,
those allegations "must be enough to raise a right to relief
above the speculative level on the assumption that all the
allegations in the complaint are true (even if doubtful in
fact)."  Id.   Moreover, "[a] claim has facial plausibility
when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant

4

is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss. <u>Id.</u> Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

In a previous Order, the Court notified the Parties that it would construe the Motion to Dismiss filed by Defendants Fort Oglethorpe and Helton as a Motion for Judgment on the Pleadings. (Order of July 20, 2018 (Docket Entry No. 69) at 1-2 n.1.) Similarly, the Court will construe the Motions filed by Defendants Catoosa County and Sisk as Motions for Judgment on the Pleadings, as those Defendants filed Answers before filing their Motions. (Def. Sisk's Answer

5

(Docket Entry No. 58); Def. Catoosa County's Answer (Docket Entry No. 60).)

Rule 12(c) of the Federal Rules of Civil Procedure provides for motions for judgment on the pleadings. Fed. R. Civ. P. 12(c). "'Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation marks and citation omitted). When considering a motion for judgment on the pleadings, the Court accepts "as true all allegations in the complaint and construe[s] them in the light most favorable to the nonmoving party." In re Northlake Foods, Inc., 715 F.3d 1251, 1255 (11th Cir. 2013). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact,

judgment on the pleadings must be denied." <u>Perez</u>, 774 F.3d at 1335.

## II. Background

### A. Plaintiff's Allegations

#### 1. The Parties

Plaintiff is a citizen and resident of Bradley County, Tennessee. (Am. Compl. (Docket Entry No. 56) ¶ 3.1.) Defendant Hamilton County is a governmental entity, and Defendant Hammond is the Sheriff of Defendant Hamilton County. (<u>Id.</u> ¶¶ 3.2-3.3.) Defendants Fort Oglethorpe and Catoosa County, Georgia ("Defendant Catoosa County") are governmental entities. (<u>Id.</u> ¶¶ 3.4-3.5.) Defendant Helton is the Chief of Police of Defendant Fort Oglethorpe. (<u>Id.</u> ¶ 3.6) Defendant Gary Sisk ("Defendant Sisk") is the Sheriff of Defendant Catoosa County. (<u>Id.</u> ¶ 3.7.)

7

Defendants Floyd Dylan ("Defendant Dylan"), Defendant Stephen Bagley ("Defendant Bagley"), Defendant James Davis ("Defendant Davis") and Defendant Tyler Gebelein ("Defendant Gebelien") are officers with the Fort Oglethorpe Police Department.  (Am. Compl. ¶¶ 3.8-3.11.)  Defendant Michael Cannon ("Defendant Cannon") is a sergeant with the Fort Oglethorpe Police Department.  (Id. ¶ 3.12.)  Defendant John McGrath ("Defendant McGrath") is a lieutenant with the Fort Oglethorpe Police Department.  (Id. ¶ 3.13.)

Defendants Brittany Gillelan is a deputy with the Catoosa County Sheriff's Department.  (Am. Compl. ¶ 3.14.) Defendants Bennett and Smith are deputies with the Hamilton County Sheriff's Department.  (Id. ¶¶ 3.15-3.15 [sic].[1])  Defendant John Does (the "Doe Defendants") are law

---

[1]   The Amended Complaint contains two paragraphs numbered 3.15.

enforcement officers with the Hamilton County Sheriff's Department, the Fort Oglethorpe Police Department, or the Catoosa County Sheriff's Department, and were present on March 8, 2017, at the scene where Plaintiff's vehicle came to rest on Cloud Springs Road.  (Id. ¶ 3.16.)

### 2.   Events Giving Rise to this Action

On March 8, 2017, Plaintiff was driving on Standifer Gap Road in Chattanooga, Tennessee, when law enforcement personnel with the Hamilton County Sheriff's Department initiated a stop of Plaintiff's vehicle.  (Am. Compl. ¶ 4.1) Georgia law enforcement personnel eventually joined the pursuit, and Plaintiff's vehicle was stopped on Cloud Springs Road, which is in Fort Oglethorpe in Catoosa County.  (Id.) Plaintiff alleges that Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, and Smith, as well as the Doe Defendants, "made the scene" and were

9

"present for all events described hereinfafter."  (Id. ¶¶ 4.2-4.11.)

Plaintiff contends that, after his vehicle came to rest, he "visibly placed both of his hands outside of the driver side window as Defendant Officers charged toward [his] location." (Am. Compl. ¶ 4.12 (footnote omitted).)  Plaintiff defines the Defendant Officers as Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett and Smith and the Doe Defendants.  (Id. at 8 n.1.)  Plaintiff alleges that "Defendant Officers" removed him from the vehicle and took him to the ground, while certain "remaining Defendant Officers" observed the others removing him from his vehicle. (Id. ¶ 4.13.)

According to Plaintiff, "Defendant Officers subsequently swarmed to [Plaintiff's] location on the ground to the left of the driver-side of [Plaintiff's] vehicle."  (Am. Compl. ¶ 4.14.)

10

Plaintiff alleges that he "was not resisting while Defendant Officers worked to secure him with handcuffs." (Id. ¶ 4.15.) According to Plaintiff, he "was brutally and unnecessarily punched, kicked, struck and stomped in his head and upper torso after [his] person was secured on the ground by Defendant Officers. (Id. ¶ 4.16.) Plaintiff alleges that, "upon information and belief," Defendants Dylon, Davis, Bagley, Gebelien, Cannon, McGrath, Gilleland, Bennett, and Smithm as well as the Doe Defendants, "used excessive force by striking [Plaintiff] as described in paragraph 4.16," or, alternatively, "participated in the excessive use of force by others by observing their use of excessive force and failing to intervene." (Id. ¶¶ 4.17-4.26.)   Plaintiff alleges that Defendant Davis "delivered blows with his baton to [Plaintiff's] lower extremities without justification" (id. ¶ 4.27), that "Defendant Officers" observed those actions (id. ¶ 4.28),

11

and that "Defendant Officers were in a position to intervene and stop Defendant Davis in that they were standing in close proximity to Defendant Davis and observed his conduct" (id. ¶ 4.29).

After the officers handcuffed Plaintiff and brought him to his feet, Plaintiff was taken to the back of a Hamilton County Sheriff's Department patrol car.   (Am. Compl. ¶ 4.30.) Plaintiff's body was bent over the trunk of that patrol car.  (Id. ¶ 4.31.)  According to Plaintiff, "[w]hile his body was resting face down on the trunk of the car, [he] was brutally beaten receiving blows to his head, neck and back," and he "was then picked up and thrown into the rear window of the patrol car where he continued to receive blows to his defenseless and handcuffed body."  (Id. ¶ 4.32.)  Plaintiff alleges that, "upon information and belief," Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, and

12

Smith, as well as the Doe Defendants, "used excessive force by striking [Plaintiff] as described in paragraph 4.32," or, alternatively, "participated in the excessive use of force by others by observing their use of excessive force and failing to intervene."   (Id. ¶¶ 4.33-4.42.)   Plaintiff contends that "Defendants Officers observed this second assault upon [Plaintiff], were in close proximity to [Plaintiff], and did nothing to aide [sic] [Plaintiff] or stop the assault."   (Id. ¶ 4.43.)   Plaintiff also alleges that "Defendant Officers[] inappropriately cursed [Plaintiff] and commented that they wished the incident had resulted in [his] death."   (Id. ¶ 4.44.) According to Plaintiff, "Defendant Officers at the scene of the brutal attack were complicit in the assault perpetrated against [Plaintiff's] defenseless person."   (Id. ¶ 4.45.)

Plaintiff alleges that he "repeatedly expressed to Defendant Officers that he could not see and was struggling

13

to breathe but his pleas for help were ignored and/or mocked by the officers present at the scene." (Am. Compl. ¶ 4.46.) According to Plaintiff, the "Defendant Officers" never attempted to stop the alleged assaults. (Id. ¶ 4.47.)

Defendants Dylon and Canon eventually transported Plaintiff to Cornerstone Medical Center ("Cornerstone"). (Am. Compl. ¶ 4.48.) Plaintiff alleges that, "[a]s a result of the attack, [he] suffered closed head trauma, multiple facial bone fractures, testicular trauma, facial lacerations, neck injury, upper back injury, and shoulder injury." (Id. ¶ 4.49.) Medical staff at Cornerstone administered Zofran, an anti-nausea medication, and morphine, a narcotic pain medication, to Plaintiff. (Id. ¶ 4.50.) Plaintiff was later transferred to Erlanger Hospital in Chattanooga based on "the severity of his injuries." (Id.)

14

Plaintiff alleges that "[t]he use of force by Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, Carson, Smith, and/or [the Doe Defendants] caused [his] injuries." (Am. Compl. ¶ 4.51.) According to Plaintiff, when he was "beaten": (1) "he was unarmed and secured in handcuffs" (id. ¶ 4.52); (2) "he did not pose a significant threat of death or seriously [sic] bodily injury to himself" (id. ¶ 4.53); and (3) "he did not pose significant threat of death or seriously [sic] bodily injury to Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, Carson, Smith, and/or [the Doe Defendants]" (id. ¶ 4.54). Plaintiff alleges that the use of force against him "was unreasonable and totally without justification." (Id. ¶ 4.55.)

According to Plaintiff, "[n]ational, state and local standards": (1) "limit the use of physical force only to overcome resistance, repel aggression or protect life" (Am.

15

Compl. ¶ 4.56) and (2) "prohibit the use of physical force as punishment" (id. ¶ 4.57). Plaintiff contends that Defendants Dylon, Davis, Bagley, Gebelien, Cannon, McGrath, Gilleland, Bennett, Carson, Smith, and the Doe Defendants: (1) "had no reason to use physical force against [Plaintiff] after his person was secured by officers" (id. ¶ 4.58); (2) "were not justified in using physical force against [Plaintiff] after his person was secured by officers" (id. ¶ 4.59); and (3) "were deliberately indifferent to [Plaintiff's] federally protected civil rights, including his right to be free from unreasonable and/or unnecessary force, excessive force, excessive force that amounts to punishment, and the wanton infliction of pain" by "using physical force against" Plaintiff (id. ¶ 4.60). Plaintiff alleges that the use of force against him was: (1) unreasonable (id. ¶ 4.61); (2) unnecessary (id. ¶ 4.62); (3) "excessive and amounted to punishment" (id. ¶ 4.63); and (4)

16

"intentional, deliberate, malicious, corrupt and was without the authority of law" (id. ¶ 4.64).

According to Plaintiff, Defendants Dylan, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, Carson, and Smith and the Doe Defendants "were aware of a substantial risk of harm in using force against [Plaintiff]" (Am. Compl. ¶ 4.65), and "consciously disregarded the risk of harm to [Plaintiff] and chose to use force despite being aware of the risk" (id. ¶ 4.66). Plaintiff alleges that, at the time the force was used, he "was not physically or verbally threatening" the officers or any other person (id. ¶ 4.67), he "did not pose a significant threat to himself" (id. ¶ 4.68), he "did not pose a threat to" the officers or to any other person (id. ¶ 4.69), and his "conduct did not create a rapidly evolving situation" (id. ¶ 4.70). Plaintiff further contends that Defendants Dylan, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland,

Bennett, Carson, and Smith and the Doe Defendants "unreasonably escalated the incident with [Plaintiff] by attacking [Plaintiff] without warning or provocation." (Id. ¶ 4.71.) Plaintiff alleges that Defendants Dylan, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, Carson, and Smith and the Doe Defendants's "attack on [Plaintiff] was done maliciously and sadistically for the very purpose of causing harm to [Plaintiff]." (Id. ¶ 4.72.)

According to Plaintiff, "[i]n doing the acts alleged in this complaint," Defendants Dylan, Davis, Bagley, and Gebelien, as well as the Doe Defendants, were "acting under the color of the statutes, ordinances, regulations, customs, and usages of the Fort Oglethorpe Government, Catoosa County Government, the State of Georgia," and under the authority of their offices as officers of the Fort Oglethorpe Police Department or as law enforcement officers. (Am. Compl. ¶¶

18

4.73-4.76, 4.82.)   Plaintiff alleges that, "[i]n doing the acts alleged in this complaint, [Defendant Cannon] was acting under the color of the statutes, ordinances, regulations, customs and usages of the Fort Oglethorpe Government, Catoosa County Government, the State of Georgia and under the authority of his office as a sergeant of the Fort Oglethorpe Police Department." (Id. ¶ 4.77.)  Plaintiff further asserts that, "[i]n doing the acts alleged in this complaint, [Defendant McGrath] was acting under the color of the statutes, ordinances, regulations, customs and usages of the Fort Oglethorpe Government, Catoosa County Government, the State of Georgia and under the authority of his office as a lieutenant of the Fort Oglethorpe Police Department." (Id. ¶ 4.78.)

According to Plaintiff, "[i]n doing the acts alleged in this complaint, [Defendant Gilleland] was acting under the color

19

of the statutes, ordinances, regulations, customs and usages of the Catoosa County Government, the State of Georgia and under the authority of her office as a detective of the Catoosa County Sheriff's Department." (Am. Compl. ¶ 4.79.) Plaintiff alleges that, "[i]n doing the acts alleged in this complaint," Defendants Bennett and Smith and the Doe Defendants were "acting under the color of the statutes, ordinances, regulations, customs and usages of the Hamilton County Government, the State of Tennessee" and under the authority of their offices as deputies of the Hamilton County Sheriff's Department or as law enforcement officers.  (Id. ¶¶ 4.80-4.81, 4.83.)

According to Plaintiff, Defendant Hamilton County "was responsible for the training of all sheriffs' deputies of Hamilton County, Tennessee, in the proper use of force in the performance of their duties."  (Am. Compl. ¶ 4.84.)

Plaintiff alleges that Defendant Catoosa County "was responsible for the training of all sheriffs' deputies and detectives of Catoosa County, Georgia, in the proper use of force in the performance of their duties." (Id. ¶ 4.85.) Plaintiff asserts that Defendant Fort Oglethorpe "was responsible for the training of all officers, lieutenants and sergeants of Fort Oglethorpe, Georgia, in the proper use of force in the performance of their duties." (Id. ¶ 4.86.)

Plaintiff alleges that, "[u]pon information and belief, Defendants Dylon, Bagley, Davis, Gebelein, Cannon, and McGrath were trained by Fort Oglethorpe, Catoosa County, Georgia in the use of force in accordance with the statutes, ordinances, regulations, customs and usages of the Fort Oglethorpe Government, the Catoosa County Government and the State of Georgia." (Am. Compl. ¶ 4.87.) Plaintiff states that, "[u]pon information and belief, Defendant

21

Gilleland was trained by [Defendant Catoosa County] in the use of force in accordance with the statutes, ordinances, regulations, customs and usages of the Catoosa County Government and the State of Georgia." (Id. ¶ 4.88.) Plaintiff alleges that, "[u]pon information and belief, Defendants Bennett and Smith "were trained by [Defendant Hamilton County] in the use of force in accordance with the statutes, ordinances, regulations, customs and usages of the Hamilton County Government and the State of Tennessee." (Id. ¶ 4.89.)

Plaintiff asserts that Defendant Fort Oglethorpe "was responsible for the customs, policies, procedures and practices implemented through its various agencies, departments and employees, including but not limited to, the policies and practices used and the training received by the Fort Oglethorpe Police Department in the use of force and in

22

exercising their powers of arrest granted them by the laws of the State of Georgia." (Am. Compl. ¶ 4.90.) Similarly, Plaintiff alleges that Defendant Catoosa County "was responsible for the customs, policies, procedures and practices implemented through its various agencies, departments and employees, including but not limited to, the policies and practices used and the training received by the Catoosa County Sheriff's Department in the use of force and in exercising their powers of arrest granted them by the laws of the State of Georgia." (Id. ¶ 4.91.) According to Plaintiff, Defendant Hamilton County "was responsible for the customs, policies, procedures and practices implemented through its various agencies, departments and employees, including but not limited to, the policies and practices used and the training received by the Hamilton County Sheriff's Department in the use of force and in exercising their powers

23

of arrest granted them by the laws of the State of Tennessee." (Id. ¶ 4.92.)

Plaintiff alleges that Defendants Fort Oglethorpe, Catoosa County, and Hamilton County "knew to a moral certainty that [their law enforcement employees] would be required to subdue arrestees by force." (Am. Compl. ¶¶ 4.93-4.95.)   According to Plaintiff, Defendants Fort Oglethorpe, Catoosa County, and Hamilton County "failed to properly train [their] employees in using force to subdue arrestees which would not cause serious bodily injuries." (Id. ¶¶ 4.96-4.98.)  Plaintiff further alleges that Defendants Fort Oglethorpe, Catoosa County, and Hamilton County "failed to properly train [their] employees in post-arrest procedures and the propriety of using force once an arrestee is restrained in handcuffs." (Id. ¶¶ 4.99-4.101.)  According to Plaintiff, the failure of Defendants Fort Oglethorpe, Catoosa County, and

Hamilton County "to properly train [their] employees in the use of force to subdue arrestees and post-arrest procedures rises to the level of deliberate indifference." (Id. ¶¶ 4.102-4.104.)

### 3.    Plaintiff's Claims

In Count I, Plaintiff asserts a 42 U.S.C. § 1983 Fourth Amendment excessive force claim.  (Am. Compl. ¶¶ 5.1-5.4.) Plaintiff alleges that "[t]he conduct of the Defendant Officers as described above deprived [Plaintiff] of his right not to be subjected to unreasonable seizure by the use of excessive and potentially deadly force under the Fourth Amendment to the United States Constitution." (Id. ¶ 5.1.)  Plaintiff contends that "Defendants are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs"

25

(id. ¶ 5.2), and that Defendants Dylon, Davis, Bagley, Gebelien, Cannon, McGrath, Gilleland, Bennett, Carson, and Smith and the Doe Defendants "are also liable to [Plaintiff] for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs in their individual capacities" (id. ¶ 5.3). Plaintiff alleges that, "[a]s a direct and proximate result of the violation of [his] constitutional rights, [he] suffered significant physical, emotional, and economic damages." (Id. ¶ 5.4.)

In count two, Plaintiff asserts a claim under the "Governmental Tort Liability Act" based on Tennessee Code Annotated § 29-20-205 or O.C.G.A. § 50-21-20, et seq. (Am. Compl. ¶¶ 6.1-6.3.) According to Plaintiff, Defendants Fort Oglethorpe, Catoosa County, and Hamilton County owed

him "a duty to protect his life and health, to have [their] employees refrain from conduct which created an unreasonable risk of injury or death, to adequately train [their] employees, and to refrain from the use of excessive and potentially deadly force except where reasonably necessary to protect the health and safety of the officers and/or the public." (Id. ¶¶ 6.1-6.3.)  Plaintiff alleges that Defendants Fort Oglethorpe, Catoosa County, and Hamilton County breached that duty by: (1) failing "to protect [Plaintiff] from the unreasonable and excessive use of potentially deadly force by [those] Defendants' employees acting within the scope of their employment" (id. ¶ 6.4A); (2) engaging "in conduct which put [Plaintiff's] life and health at risk by using deadly force in a situation where such force was unnecessary and unreasonable" (id. ¶ 6.4B); and (3) failing "to adequately train and supervise [their] employees in

27

regard to the proper use of force" (id. ¶ 6.5B).   Plaintiff asserts that, "[a]s a direct and proximate result of the negligence of [Defendants Fort Oglethorpe, Catoosa County, and Hamilton County, Plaintiff] suffered significant physical, emotional, and economic damages." (Id. ¶ 6.3 [sic].)

In count three, Plaintiff asserts a claim for "responsibility for actions of deputies" under Tennessee Code Annotated § 8-8-302 and O.C.G.A. §§ 15-16-23, 15-16-24, and 36-33-1. (Am. Compl. ¶ 7.1)  Plaintiff alleges that: "Pursuant to Tenn. Code Ann. §§ 8-8-302, and/or [O.C.G.A.] §§ 15-16-23 and -24, as well as [O.C.G.A.] § 36-33-1, [Defendants Hamilton County, Fort Oglethorpe, and Catoosa County] are responsible for the actions and inactions of" Defendants Dylon, Davis, Bagley, Gebelein, Cannon, McGrath, Gilleland, Bennett, Smith, and the Doe Defendants. (Id.)

28

Plaintiff alleges that, "[a]s a direct and proximate result of the conduct of the Defendants as described above, [Plaintiff] experienced extreme emotional and physical pain and suffering from the beginning of the beating until present," (Am. Compl. ¶ 8.1), Plaintiff "experienced extreme mental anguish, humiliation, pain and suffering" (id. ¶ 8.2), Plaintiff "incurred substantial medical bills" (id. ¶ 8.3), and Plaintiff "suffers from permanent injuries to his face, neck and back" (id. ¶ 8.4).

## B.   Procedural Background

On March 2, 2018, Plaintiff filed this lawsuit.  (Compl. (Docket Entry No. 1).)  On July 5, 2018, Plaintiff filed his Amended Complaint.   (Am. Compl.)   On July 19, 2018, Defendants Hamilton County, Hammond, Bennett, Smith, Fort Oglethorpe, and Helton all filed their Motions to Dismiss. (Mots. Dismiss (Docket Entry Nos. 61-64, 66).)  On July 27,

2018, Defendants Catoosa County and Sisk filed their Motions for Judgment on the Pleadings. (Def. Catoosa Cty.'s Mot. J. Pleadings (Docket Entry No. 70); Def. Sisk's Mot. J. Pleadings (Docket Entry No. 71).)

Plaintiff did not file a response to Defendant Hammond's Motion to Dismiss within the applicable time period provided by the Local Rules or within the time period provided in the Court's August 3, 2018, Order. (See Order of Aug. 3, 2018 (Docket Entry No. 72) (directing Plaintiff to respond to various Motions to Dismiss, including Defendant Hammond's Motion to Dismiss, within seven days after the date of that Order).) Defendant Fort Oglethorpe did not file a reply within the applicable time period provided by the Local Rules. (See generally Docket.) The briefing processes for all the other

30

Motions are complete,[2] and the Court finds that the matters are ripe for resolution.

## III.  Discussion

### A.  Defendant Hamilton County's Motion

In its Motion to Dismiss, Defendant Hamilton County argues that: (1) it cannot be liable under § 1983 on the basis of respondeat superior; (2) Plaintiff failed to allege sufficient facts to show that it has an unconstitutional policy or custom; and (3) Plaintiff did not allege sufficient facts to show that it can be liable under a failure to train theory.  (Br. Supp. Def. Hamilton Cty.'s Mot. Dismiss (Docket Entry No. 61) at 2.) The Court addresses those contentions in turn.

---

[2]    Plaintiff filed both responses and briefs in response to the Motions.  For the benefit of Plaintiff's counsel, the Court notes that it is not necessary to file both a "response" and a "brief in response" to Motions before this Court.  Simply filing a response brief is sufficient.

## A.   Respondeat Superior

As an initial matter, Defendant Hamilton County is correct that Plaintiff may not hold it liable under § 1983 based on a theory of respondeat superior.  A municipality or county may be held liable under § 1983 where its "own violations were at issue but not where only the violations of others were at issue."  Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 37 (2010) (emphasis in original).   Thus, "a plaintiff cannot rely upon the doctrine of respondeat superior to hold the [municipality or county] liable."  Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1328 (11th Cir. 2015).   "Instead, 'municipal liability is limited to action for which the municipality is actually responsible.'" Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1263 (11th Cir. 2010) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986)).  Thus, to the extent that Plaintiff seeks to

32

hold Defendant Hamilton County liable under a theory of respondeat superior, this claim clearly fails. The Court therefore grants Defendant Hamilton County's Motion to Dismiss as to this claim.

## B.   Unconstitutional Policy or Custom

The Court also agrees with Defendant Hamilton County that Plaintiff failed to allege sufficient facts to show an unconstitutional policy or custom. "[A] municipality may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" Doe, 604 F.3d at 1263 (quoting Denno v. Sch. Bd. of Volusia Cty., Fla., 218 F.3d 1267, 1276 (11th Cir. 2000)). "In addition to identifying conduct attributable to the municipality, a plaintiff alleging municipal liability under §

33

1983 must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences." Id. (internal quotation marks and citation omitted). A plaintiff asserting a § 1983 claim against a local governmental entity "(1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

A county or municipality is liable under § 1983 only when that county or municipality's official policy causes a constitutional violation. Grech, 335 F.3d at 1329. To

34

establish a policy, a plaintiff may "identify either (1) an officially promulgated [municipal or] county policy or (2) an unofficial custom or practice of the [municipality or] county shown through the repeated acts of a final policymaker for the [municipality or] county." Id.

Here, Defendant Hamilton County correctly points out that Plaintiff fails to present any non-conclusory allegations to show that a custom or policy of Defendant Hamilton County caused Plaintiff's injuries. Plaintiff includes a number of allegations in his Amended Complaint; however, those allegations are primarily legal conclusions or conclusory assertions, which the Court is not required to accept.[3]

_____

[3]   Interestingly, Plaintiff cites to various legal conclusions and conclusory assertions to support his contention that he pleaded sufficient factual matter to support his claims.  (Br. Resp. Def. Hamilton Cty.'s Mot. Dismiss (Docket Entry No. 75-1) at 5-7.)

Plaintiff thus has not stated a viable § 1983 claim against Defendant Hamilton based on a custom or policy theory.

## C.   Failure to Train

To establish liability based on a failure to train argument, Plaintiff must allege that "the need for . . . [such policy or training] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymaker[] . . . can reasonably be said to have been deliberately indifferent to the need." Hazelton v. DeKalb Cty., Ga., 496 F. App'x 931, 934 (11th Cir. 2012) (per curiam) (some alterations in original) (internal quotation marks and citation omitted). "For a history of abuse to be sufficiently widespread to put a [municipality] on notice, the abuse must be obvious, flagrant, rampant and of continued duration, rather than isolated

36

occurrences." <u>Doe</u>, 604 F.3d at 1266 (internal quotation marks and citation omitted).  "[A] few isolated instances . . . will not suffice." <u>Id.</u> (internal quotation marks and citation omitted).   Further, to establish a history of widespread abuse, a plaintiff must show that the past complaints had merit. <u>Brooks v. Scheib</u>, 813 F.2d 1191, 1193 (11th Cir. 1987); <u>see also</u> <u>Reed v. City of Lavonia</u>, 390 F. Supp. 2d 1347, 1367 (M.D. Ga. May 19, 2005) ("The Eleventh Circuit has held . . . that a city is not deemed to have notice of past police misconduct if the plaintiff never demonstrated that past complaints of police misconduct had any merit." (internal quotation marks and citation omitted)).  "[T]he number of complaints bears no relation to their validity." <u>Brooks</u>, 813 F.2d at 1193.

Here, Plaintiff has failed to point to anything more than this single incident to support liability on the part of Defendant Hamilton County based on a failure to train theory.   This incident is insufficient to establish that a widespread history of abuse existed.   See Hodge v. Taylor, No. 3:13-CV-601-MEF, 2014 WL 3058544, at *4 (M.D. Ala. July 7, 2014) ("A single incident of misconduct by itself cannot demonstrate a history of widespread abuse sufficient to put [the sheriff] on notice.").   Further, the fact that a particular Defendant Hamilton County officer might have received unsatisfactory training is not sufficient to establish liability on the part of Defendant Hamilton County. See City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten

38

liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").   Moreover, even presuming that Plaintiff established a pattern of constitutional violations, he has not shown that constitutional violations were likely to recur without training.   See Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami, Fla., 637 F.3d 1178, 1189 (11th Cir. 2011) ("[A] plaintiff must also demonstrate that constitutional violations were likely to recur without training.").   In any event, Plaintiff failed to plead sufficient factual allegations to support any claim under a failure to train theory.   Plaintiff, at most, set forth conclusory allegations and legal conclusions, which are not sufficient to state a claim for relief.   Under those circumstances, Plaintiff cannot establish municipal liability

on the part of Defendant Hamilton County under a failure to train theory.

It appears that Plaintiff may be intending to proceed under a theory that the need for training was "so obvious" that a single incident of misconduct is enough to hold Defendant Hamilton County liable. "[T]he Supreme Court in City of Canton left open the possibility that in a narrow range of circumstances a plaintiff may proceed on a failure to train claim based upon a single incident of misconduct." Davis v. City of Montgomery, 220 F. Supp. 3d 1275, 1283 (M.D. Ala. Nov. 10, 2016) (internal quotation marks, footnote, and citation omitted). "The City of Canton Court posed the hypothetical of a municipality that failed to train its police officers on the use of deadly force." Id. "[S]ingle-incident liability is

40

predicated on (1) the likelihood that a police officer will be confronted with a specific situation and (2) the predictability that an officer, when confronted with that situation, will violate a person's constitutional rights." Id. Here, Plaintiff simply has not alleged sufficient facts to support an allegation that it is a highly predictable consequences of the alleged failure to train that police officers would violate the constitutional rights of individuals. Id. at 1285.[4] Under those circumstances, Plaintiff failed to plead "sufficient facts to support a plausible inference that [Defendant Hamilton County's] failure to train amounted to deliberate indifference." Id.

---

[4]   Indeed, Plaintiff alleges that Defendants Bennett and Smith received training from Defendant Hamilton County concerning the use of force.  (Am. Compl. ¶ 4.89.)  Plaintiff thus is not alleging that Defendants Bennett and Smith received no training concerning the use of force; instead, he is alleging that they did not receive sufficient training.

41

Similarly, Defendant Hamilton County correctly points out that, even if Plaintiff asserts some type of state law claim against Defendant Hamilton County based on allegedly deficient training or supervision, Plaintiff failed to allege sufficient facts to support that claim. (Br. Supp. Def. Hamilton Cty.'s Mot. Dismiss at 16.) Plaintiff, at most, included a laundry list of legal conclusions and conclusory assertions in his Amended Complaint—none of which satisfy the pleading standard set forth in Twombly and Iqbal. In any event, even if Plaintiff had pleaded a viable Georgia state law tort claim against Defendant Hamilton County, that claim would fail because Plaintiff failed to allege that he provided the required ante litem notice. Although Plaintiff contends that Tennessee does not have an ante litem requirement,

42

any claim that he might assert under Tennessee law fails

because Plaintiff failed to allege sufficient facts to support

it. (Br. Resp. Def. Hamilton Cty.'s Mot. Dismiss (Docket

Entry No. 75-1) at 14.)[5]

### D.   42 U.S.C. § 1988

To the extent that Plaintiff seeks attorney's fees from

Defendant Hamilton County under 42 U.S.C. § 1988, that

---

[5]      It is worth noting that, under Georgia's choice of law rules, the substantive law to be applied in a tort case is the law of the place of the wrong. See In re Tri-State Crematory Litig., 215 F.R.D. 660, 678 (N.D. Ga. Mar. 17, 2003) ("The Georgia conflicts of law rule governing tort actions is lex loci delecti, or the place of the wrong."). Plaintiff alleges that his injury occurred in Catoosa County, Georgia. (Am. Compl. ¶ 4.1.)  Georgia law ordinarily would apply even to Plaintiff's claims against Defendant Hamilton County. See Harris v. City of Chattanooga, 507 F. Supp. 374, 377-78 (N.D. Ga. Feb. 5, 1981) (finding that Georgia's ante litem notice requirement applied to a plaintiff's claims against the City of Chattanooga, Tennessee, where the plaintiff's injury occurred in Georgia).  If Georgia law applies, Plaintiff's state law claims against Defendant Hamilton County would fail because Plaintiff has not demonstrated that he provided Defendant Hamilton County with the required ante litem notice.

claim fails in the absence of a substantive federal cause of action to support it.  See <u>Thomas v. Murkerson</u>, No. 1:04-CV-30(WLS), 2005 WL 2031110, at *2 (M.D. Ga. Aug. 19, 2005) (noting that "attorneys' fees pursuant to 42 U.S.C. § 1988 as a remedy are traditionally sought after a Plaintiff prevails in his 42 U.S.C. § 1983 claim and are not considered a separate, independent cause of action").

## E.  Summary

In sum, Plaintiff's Amended Complaint fails to allege viable claims against Defendant Hamilton County.  The Court therefore grants Defendant Hamilton County's Motion to Dismiss, and dismisses Defendant Hamilton County from this action.

44

## IV.  Defendant Hammond's Motion to Dismiss

Defendant Hammond moved to dismiss Plaintiff's claims against him, arguing that Plaintiff cannot hold him liable under § 1983 based on a theory of respondeat superior and that Plaintiff failed to plead sufficient facts to state a viable § 1983 supervisory liability claim against him.  (Br. Supp. Def. Hammond's Mot. Dismiss (Docket Entry No. 62-1) at 1-2.)  For the following reasons, the Court agrees.

"It is well established that supervisors are not subject to § 1983 liability under theories of respondeat superior or vicarious liability." Gibbons v. McBride, 124 F. Supp. 3d 1342, 1364 (S.D. Ga. Aug. 21, 2015). "Instead, supervisors can violate federal law and be held individually liable for the conduct of their subordinates only 'when the supervisor

45

personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" Id. (quoting Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047 (11th Cir. 2014)). "A plaintiff can establish a causal connection by alleging that: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id.   "'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than

isolated occurrences.'" Id. (quoting Williams v. Santana, 340 F. App'x 614, 617 (11th Cir. 2009)).  "'In short, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous.'" Id. at 1364-65 (quoting Keith, 749 F.3d at 1048).

Admittedly, a supervisor may be held liable under § 1983 for failure to train.  However, "'under § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact.'" Gibbons, 124 F. Supp. 3d at 1365 (quoting Keith, 749 F.3d at 1052).  "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, . . . and when

47

the failure to train is likely to result in the violation of a constitutional right." Id. (alterations in original) (internal quotation marks and citation omitted). "'Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Keith, 749 F.3d at 1052).

Here, Plaintiff's allegations are not sufficient to state a viable § 1983 claim against Defendant Hammond. First, Plaintiff does not allege that Defendant Hammond personally participated in the events that gave rise to this action, and he cannot hold Defendant Hammond liable under § 1983 based

48

on a respondeat superior theory. Second, Plaintiff's Amended Complaint fails to include sufficient non-conclusory allegations to show that a causal connection existed between Defendant Hammon's actions and Plaintiff's alleged constitutional deprivation, or to show liability based on a failure to train theory. As previously noted, Plaintiff simply put forth legal conclusions and conclusory assertions, which are insufficient to state a viable claim against Defendant Hammond. The Court therefore grants Defendant Hammond's Motion to Dismiss as to Plaintiff's § 1983 claim. Similarly, to the extent that Plaintiff seeks attorney's fees against Defendant Hammond under § 1988, that request fails for the same reasons as set forth supra Part III.D.

## V.   Defendant Bennett's Motion to Dismiss

Defendant Bennett argues that Plaintiff's Amended Complaint fails to state a viable § 1983 excessive force claim

49

against him based on a failure to intervene theory.   (Br. Supp. Def. Bennett's Mot. Dismiss (Docket Entry No. 63-1) at 12-18.)  Plaintiff responded that, in the Complaint, he alleged that Defendant Bennett "used excessive force by striking [Plaintiff] as described in paragraph 4.16," or, alternatively, "participated in the excessive use of force by others by observing their use of excessive force and failing to intervene." (Id. ¶¶ 4.24.) This allegation, however, is a legal conclusion, and it does nothing to satisfy Plaintiff's pleading obligations.   It may well be that Defendant Bennett or another Defendant on the scene used unreasonable force against Plaintiff, and it may well be that Plaintiff has had difficulty identifying the various Defendants responsible for the use of excessive force, Plaintiff, however, has the burden of producing something other than conclusory assertions to support his claims.  Plaintiff simply has not alleged sufficient

50

facts to show that Defendant Bennett used excessive force against him.

To the extent that Plaintiff alleges that Defendant Bennett is liable to Plaintiff for failing to intervene to prevent the use of excessive force, "an officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Bch., Fla., 208 F.3d 919, 924 (11th Cir. 2000). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Id.

Here, however, Plaintiff failed to set forth sufficient factual allegations to support his failure to intervene claim. Plaintiff simply listed various legal conclusions to support his contentions that Defendant Bennett was close enough to have intervened to prevent the use of force and that he had an opportunity to do so. While the Court is sympathetic to Plaintiff's difficulties in obtaining information to support his

51

claims, Plaintiff's counsel must do more to plead a viable §

1983 excessive force claim than set forth a laundry list of

conclusory assertions and legal conclusions.  Here, he has

not met his burden to allege sufficient facts to allow the Court

to conclude that Defendant Bennett "had time and [was] in a

position to intervene."  Marantes v. Miami-Dade Cty., 649 F.

App'x 665, 672 (11th Cir. 2016) (per curiam).  Under those

circumstances, Plaintiff has failed to state a viable § 1983

failure to intervene claim against Defendant Bennett. Id.; see

also Espinoza v. Harrelson, Case No. 6:15-cv-1923-Orl-

37GJK, 2016 WL 3926497, at *3 (S.D. Fla. July 21, 2016)

(finding that a plaintiff's complaint did not state a viable

failure to intervene claim where the plaintiff simply alleged

that the officers "(1) were in such close proximity to Officer

Harrelson during the Shooting that they were in a position to

intervene and chose not to do so, and (2) had ample means

and opportunity to take action to stop the Shooting," as the plaintiff "fail[ed] to allege any plausible facts that the Standby Officers had the opportunity observe and halt the Shooting," such as "factual allegations concerning: (1) the duration of the Shooting; (2) any circumstances that would give rise to an inference that the Shooting was about to occur; (3) whether the Standby Officers observed the Shooting as it occurred; or (4) what, if anything, the Standby Officers might have done to influence the decision of Officer Harrelson to fire his weapon" (internal quotation marks and citations omitted)).[6]

---

[6]   Plaintiff contends that the alleged "first beating" should have put Defendant Bennett on notice that a further beating was possible.  Plaintiff, however, failed to allege facts to show that one officer's alleged "beating" should put another officer on notice that a completely different officer might assault Plaintiff in the future.  As Defendant Bennett points out, even if he "was on notice that another use of excessive force was 'possible,' this is not advance notice that it was imminent or even probable."

53

In sum, the Court agrees with Defendant Bennett that Plaintiff's Amended Complaint lacks sufficient factual allegations to state a viable § 1983 excessive force or failure to intervene claim against Defendant Bennett.[7]   The Court therefore grants Defendant Bennett's Motion to Dismiss.

## VI.   Defendant Smith's Motion to Dismiss

Similarly, Defendant Smith argues that Plaintiff's Amended Complaint fails to allege a viable § 1983 failure to intervene claim against him.   (Br. Supp. Def. Smith's Mot. Dismiss (Docket Entry No. 64-1) at 12-18.)   For the same

---

(Reply Supp. Def. Bennett's Mot. Dismiss (Docket Entry No. 79) at 9.)  Plaintiff has not stated a viable failure to intervene claim under this theory.

[7]   Given this conclusion, the Court need not, and does not, address Defendant Bennett's arguments concerning qualified immunity.

54

reasons as stated supra Part V, the Court agrees.[8]   The Court therefore grants Defendant Smith's Motion to Dismiss.

## VII.   Defendants Fort Oglethorpe and Helton's[9] Motion for Judgment on the Pleadings

### A.   Federal Claims

Defendants Fort Oglethorpe and Helton argue that they cannot be held liable under § 1983 based on a vicarious liability theory.   (Br. Supp. Defs. Fort Oglethorpe and Helton's Mot. Dismiss (Docket Entry No. 66-1) at 4-5.)   For the reasons set forth supra Part III.A., the Court agrees.

---

[8]   The Court need not, and does not, address Defendant Smith's arguments concerning qualified immunity.

[9]   In his response to the Motion to Dismiss filed by Defendants Fort Oglethorpe and Helton, Plaintiff stated that he agreed "that Defendant Helton should be dismissed from the lawsuit."   (Pl.'s Br. Resp. Defs. Fort Oglethorpe and Helton's Mot. Dismiss (Docket Entry No. 76-1) at 10.)   Plaintiff, however, has not yet filed a document dismissing Defendant Helton from this action, and the Court has addressed the merits of Plaintiff's claims against Defendant Helton for the sake of completeness.

Specifically, a plaintiff cannot recover under § 1983 based on respondeat superior or vicarious liability.

Defendant Fort Oglethorpe also argues that Plaintiff failed to plead sufficient factual allegations to support a § 1983 claim against it based on a theory of municipal liability. (Br. Supp. Defs. Fort Oglethorpe and Helton's Mot. Dismiss at 5-8.)   For the reasons discussed <u>supra</u> Part III.A., the Court agrees.   Plaintiff failed to plead sufficient, non-conclusory allegations to show a policy, custom, or practice on the part of Defendant Fort Oglethorpe that caused Plaintiff's injury, and he failed to include sufficient non-conclusory allegations to establish liability based on a failure to train theory.[10]

---

[10]   The Court also observes that Plaintiff failed to plead sufficient non-conclusory allegations to state a § 1983 supervisory liability claim against Defendant Helton.  Given this

In sum, Plaintiff's Amended Complaint fails to plead viable § 1983 claims against Defendants Fort Oglethorpe and Helton. Those Defendants therefore are entitled to judgment on the pleadings with respect to Count I of Plaintiff's Amended Complaint.

## B. State Law Claims

To the extent that Plaintiff seeks to hold Defendant Fort Oglethorpe liable under the Georgia State Tort Claims Act, this claim fails because the Georgia State Tort Claims Act does not apply to cities. See O.C.G.A. § 50-21-22(5) ("'State' means the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, school districts, other units of local

---

conclusion, the Court need not, and does not, address Defendant Helton's contentions concerning qualified immunity.

57

government, hospital authorities, or housing and other local authorities."). Count II of Plaintiff's Amended Complaint thus does not state a viable claim against Defendant Fort Oglethorpe.

In Count III, Plaintiff alleges that Defendant Helton is liable for the actions of his deputies under O.C.G.A. § 15-16-23, O.C.G.A. § 15-16-24, and O.C.G.A. § 36-33-1.  As an initial matter, O.C.G.A. § 15-16-23 and § 15-16-24 apply only to sheriffs.  See O.C.G.A. § 15-16-23 ("Sheriffs are authorized in their discretion to appoint one or more deputies . . . ."); O.C.G.A. § 15-16-24 ("Sheriffs are liable for the misconduct of their jailers as they are liable for their deputies."); see also Massey v. Perkinson, 129 Ga. App. 895, 201 S.E.2d 830 (1973) ("Contrary to the rule as to the liability of a sheriff for the tortious conduct of his deputies in line of duty, there is no statute of which we are aware that

58

makes a chief of police liable for the tortious conduct of the individual policemen who serve under him." (citation omitted)).   Likewise, O.C.G.A. § 36-33-1 provides no basis for asserting a claim against Defendant Helton, as Plaintiff has not alleged that Defendant Helton was on the scene or participated in or witnessed any use of force.   Count III therefore does not state a viable claim against Defendant Helton.

Further, O.C.G.A. § 36-33-1 does not create liability for Defendant Fort Oglethorpe.   That statute provides for a limited waiver of sovereign immunity for cities in certain circumstances.   O.C.G.A. § 36-33-1.   O.C.G.A. § 36-33-3, however, provides: "A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3.   Under those circumstances, Count III

does not state a viable claim against Defendant Fort Oglethorpe. See Campbell v. Goode, 304 Ga. App. 47, 50-51, 695 S.E.2d 44, 46-57 (2010) (finding that a city had no liability for an officer's breaking an arrestee's arm, as the alleged negligence was not related to the use of a motor vehicle, and no genuine dispute remained as to whether the city waived its sovereign immunity).

Finally, the Court agrees with Defendant Fort Oglethorpe that Plaintiff's state law claims against it fail because Plaintiff failed to allege that he provided the required ante litem notice. Under O.C.G.A. § 36-33-5, before filing suit, a person with a claim for money damages against a municipality "on account of injuries to person or property" must provide notice to the municipality of the alleged claim within six months of the event upon which the claim is based. O.C.G.A. § 36-33-5. Compliance with

O.C.G.A. § 36-33-5 is a condition precedent to bringing a lawsuit.  See Fulton v. City of Roswell, 982 F. Supp. 1472, 1475 (N.D. Ga. Nov. 7, 1997) (stating that the failure to provide a required ante litem notice is an absolute bar to a claim).  Further, a plaintiff must allege compliance with the ante litem statute in his or her complaint.  See Moh v. City of Atlanta, Civil Action File No. 1:10-CV-04058-TWT-AJB, 2011 WL 2579829, at *5 (N.D. Ga. May 20, 2011) ("'Where a complaint fails to allege that such written [ante litem] notice has been given, the Georgia courts have held that the complaint does not state a cause of action against a municipal corporation.'" (quoting Dague v. Riverdale Athletic Ass'n, 99 F.R.D. 325, 327 (N.D. Ga. Sept. 30, 1983))).  Because Plaintiff has not alleged that he complied with the ante litem notice requirements, his state law claims against Defendant Fort Oglethorpe fail as a matter of law.

## VIII. Defendant Catoosa County's Motion for Judgment on the Pleadings

### A.   Federal Claims

Defendant Catoosa County argues that it is entitled to judgment on the pleadings to the extent that Plaintiff asserts a § 1983 claim against it based on respondeat superior. (Br. Supp. Def. Catoosa Cty.'s Mot. J. Pleadings (Docket Entry No. 70-1) at 6.) For the reasons discussed <u>supra</u> Part III.A., the Court agrees. The Court therefore grants Defendant Catoosa County's Motion for Judgment on the Pleadings as to any § 1983 claims asserted against it based on respondeat superior.

Defendant Catoosa County also argues that it cannot be liable under § 1983 for the law enforcement functions of the sheriff or his deputies and detectives. (Br. Supp. Def. Catoosa Cty.'s Mot. J. Pleadings at 6-9.) The Court agrees.

<u>Grech</u>, 335 F.3d at 1337.  Alternatively, for the reasons discussed <u>supra</u> Part III.A., Plaintiff's allegations are insufficient to state a claim against Defendant Catoosa County under § 1983.  The Court therefore grants Defendant Catoosa County's Motion for Judgment on the Pleadings as to Plaintiff's § 1983 claims asserted against it.

## B.  State Law Claims

Defendant Catoosa County argues that sovereign immunity bars Plaintiff's state law claims asserted against it. (Br. Supp. Def. Catoosa Cty.'s Mot. J. Pleadings at 10-11.) The Georgia Supreme Court has noted:

> The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions.  The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which

> liability insurance protection was provided. In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity "to the state and all of its departments and agencies," and this immunity is to prevail except as specifically provided therein.

Gilbert v. Richardson, 264 Ga. 744, 745-76, 452 S.E.2d 476, 478 (1994) (citations and footnotes omitted).  "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. of 1983, Art. I, § 2, ¶ IX(e).  "Sovereign immunity . . . is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case."  Dep't of Transp. v. Dupree, 256 Ga. App. 668, 671, 570 S.E.2d 1, 5 (2002).  "[A]ny waiver [of sovereign immunity] must be established by the party

64

benefitting from such waiver." <u>Maxwell v. Cronan</u>, 241 Ga. App. 491, 492, 527 S.E.2d 1, 2 (1999) (citation omitted). "The doctrine of sovereign immunity also applies to counties." <u>Russell v. Barrett</u>, 296 Ga. App. 114, 120, 673 S.E.2d 623, 628 (2009).

In 1992, the Georgia General Assembly enacted the Georgia Tort Claims Act (the "GTCA"), which is codified at O.C.G.A. § 50-21-20, <u>et seq.</u> and which waives the State's sovereign immunity for the torts of its officers or employees. <u>Gilbert</u>, 264 Ga. at 747, 452 S.E.2d at 479.  The GTCA, however, "expressly excludes counties from the ambit of this waiver."  <u>Id.</u>; <u>see also</u> O.C.G.A. § 50-21-22(5) (excluding counties from definition of "state" for purposes of GTCA); <u>Currid v. DeKalb State Court Probation Dep't</u>, 285 Ga. 184, 188, 674 S.E.2d 894, 897 (2009) ("The waiver of sovereign immunity contained in the [GTCA] does not apply to

65

counties."). Thus, the GTCA does not waive Defendant Catoosa County's sovereign immunity.

Admittedly, O.C.G.A. § 33-24-51 waives sovereign immunity for certain claims against counties or municipalities arising from use of insured motor vehicles. O.C.G.A. § 33-24-51. Plaintiff's claims, however, do not arise from the use of a motor vehicle. Plaintiff also has not come forth with allegations showing that Defendant Catoosa County waived its sovereign immunity by purchasing other insurance. Under those circumstances, Plaintiff has not successfully alleged that Defendant Catoosa County waived its sovereign immunity, and sovereign immunity bars Plaintiff's state law claims against Defendant Catoosa County. The Court therefore grants Defendant Catoosa County's Motion for Judgment on the Pleadings as to Plaintiff's state law claims.

## IX.  Defendant Sisk's Motion for Judgment on the Pleadings

### A.  § 1983 Claims

Defendant Sisk argues that he cannot be liable under § 1983 based on a theory of respondeat superior.  (Br. Supp. Def. Sisk's Mot. J. Pleadings (Docket Entry No. 71-1) at 5-6.) For the reasons discussed <u>supra</u> Part IV.A., the Court agrees.  Similarly, for the reasons stated supra Part IV.A., Plaintiff failed to plead a viable § 1983 claim against Defendant Sisk based on a supervisory liability theory.[11]  The Court therefore grants Defendant Sisk's Motion for Judgment on the Pleadings with respect to Plaintiff's § 1983 claims.

---

[11]   Given this conclusion, the Court need not, and does not, address Defendant Sisk's arguments concerning Eleventh Amendment immunity.  (Br. Supp. Def. Sisk's Mot. J. Pleadings at 6-9.)

67

## B.   State Law Claims

Defendant Sisk contends that sovereign immunity bars Plaintiff's state law claims, which are asserted against him in his official capacity.   A suit against a public official in his official capacity is considered a suit against the entity that the official represents.   Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015). To the extent that Defendant Sisk, in his official capacity, is deemed a representative of Defendant Catoosa County, sovereign immunity bars Plaintiff's state law claims asserted against Defendant Sisk in his official capacity for the same reasons as set forth supra Part VIII.B.

To the extent that Defendant Sisk, in his official capacity, is considered an agent of the State of Georgia, sovereign immunity also bars Plaintiff's state law claims asserted against him.   The Georgia Supreme Court has noted:

68

The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions.   The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which liability insurance protection was provided.   In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity "to the state and all of its departments and agencies," and this immunity is to prevail except as specifically provided therein.

Gilbert v. Richardson, 264 Ga. 744, 745-76, 452 S.E.2d 476, 478(1994) (citations and footnotes omitted).  "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. of 1983, Art. I, § 2, ¶ IX(e).   "Sovereign immunity . . . is not an affirmative defense, going to the merits of the case, but

69

raises the issue of the trial court's subject matter jurisdiction to try the case." Dep't of Transp. v. Dupree, 256 Ga. App. 668, 671, 570 S.E.2d 1, 5 (2002). "Any waiver [of sovereign immunity] must be established by the party benefitting from such waiver." Maxwell v. Cronan, 241 Ga. App. 491, 492, 527 S.E.2d 1, 2 (1999). Here, Plaintiff has failed to allege any facts that would support a waiver of sovereign immunity, and sovereign immunity bars his claims asserted against Defendant Sisk to the extent that Defendant Sisk, in his official capacity, is considered an agent of the State.

In sum, Plaintiff failed to allege sufficient facts to support his state law claims against Defendant Sisk. The Court therefore grants Defendant Sisk's Motion for Judgment on the pleadings, and dismisses Defendant Sisk from this action.

## X.   Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant Hamilton County's Motion to Dismiss [61], **GRANTS** Defendant Hammond's Motion to Dismiss [62], **GRANTS** Defendant Bennett's Motion to Dismiss [63], **GRANTS** Defendant Smith's Motion to Dismiss [64], and **GRANTS** Defendants Fort Oglethorpe and Helton's Motion to Dismiss, which the Court construes as a Motion for Judgment on the Pleadings [66].  The Court **GRANTS IN PART AND DENIES AS MOOT IN PART** Defendant Catoosa County's Motion to Dismiss, or, in the Alternative, Motion for Judgment on the Pleadings [70].   The Court **GRANTS** the portion of the Motion seeking a judgment on the pleadings, but it **DENIES AS MOOT** the portion of the Motion styled as a motion to dismiss for failure to state a claim.  The Court **GRANTS IN PART AND DENIES AS MOOT IN PART** Defendant Sisk's

Motion to Dismiss, or, in the Alternative for Judgment on the Pleadings [71].   The Court **GRANTS** the portion of the Motion seeking judgment on the pleadings, but it denies as moot the portion of the Motion that is styled as a motion to dismiss for failure to state a claim.   Because Plaintiff has already received one opportunity to re-plead his claims and still failed to state viable claims for relief, these dismissals are **WITH PREJUDICE**.   Specifically, the Court **DISMISSES WITH PREJUDICE** from this action the following Defendants: (1) Defendant Hamilton County; (2) Defendant Hammond; (3) Defendant Smith; (4) Defendant Bennett; (5) Defendant Fort Oglethorpe; (6) Defendant Helton; (7) Defendant Catoosa County; and (8) Defendant Sisk.

IT IS SO ORDERED, this the 23rd day of August, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

72