IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| **PHILLIP WAYNE KOGER,** | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.: 4:18-cv-00053 |
| | ) | |
| **GREGGORY CARSON, ET AL,** | ) | Judge Harold L. Murphy |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

_____

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GREGGORY CARSON'S MOTION FOR SUMMARY JUDGMENT**
_____

Comes now Plaintiff, Phillip Wayne Koger, by and through counsel, and hereby files his Brief in Support of his Response in Opposition to Defendant Greggory Carson's Motion for Summary Judgment. Plaintiff incorporates his response to Defendant Greggory Carson's Statement of Undisputed Material Facts, and Plaintiff's Statement of Undisputed Material Facts, verbatim, as if stated herein.

**PROCEDURAL BACKGROUND**

Plaintiff's Second Amended Complaint was filed on October 22, 2018. In his complaint, Plaintiff alleged that Defendant Carson (hereinafter Carson) punched and elbowed Plaintiff in the back, neck and head. (Second Am. Compl. ¶ 4.11-4.12). Further, Plaintiff alleged that Carson "employed an uppercut like motion to

1

[Plaintiff's] groin area, specifically his testicles, causing [Plaintiff] to be lifted off of the ground and slammed onto the trunk of the Hamilton County patrol car." (Id. ¶ 4.13). Plaintiff alleged that by deploying these techniques, Carson exercised excessive force against Plaintiff. (Id. ¶ 4.14).

## LAW AND ARGUMENT

### I.  Deprivation of Liberty

The law requires that the movant show that there is "no genuine dispute as to any material fact and entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All issues of material fact are resolved in favor of the plaintiff and all evidence, factual inferences, and reasonable doubt are viewed and resolved in the light most favorable to the non-moving party. *Alston v. Swarbrick*, 2020 U.S. App. LEXIS 9453, *5-6 (11th Cir. 2020).  A trial court acts improperly if it accepts an officer's version of the facts and/or draws inferences in favor of the officers. *Id.* at *8. "[T]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Id.* at *10-1(quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)).  Determining what force used is reasonable to affect the seizure under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion'…against the governmental interests at stake." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)(quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

To determine whether the force used was reasonably proportionate, the Court must consider the severity of the crime, the danger to the officer, and the risk of flight. *Id.* at 1198. After this analysis is complete the Court must assess whether the officer is entitled to qualified immunity as stated below. Although not dispositive, threatening language can be considered as part of the totality of the circumstances to determine what is constitutionally reasonable. *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (*abrogated* on a different issue in *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (June 22, 2015) (only as to the standard for determining if force was reasonable)) . The analysis for excessive force is not qualitatively different than the analysis for probable cause. *Saucier v. Katz*, 533, U.S. 194, 206 (2001)(Overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)(holding that the order in which the courts review the prongs of qualified immunity is not mandatory)). The analysis for probable cause is based on the officer's reasonable beliefs as to facts establishing the existence of probable cause. *Id.*  The same standard of reasonableness is applied at the moment of the use of force. *Id.*(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Further, the reasonable determination is objective, based upon the "facts confronting the officer." *Montoute v. Carr*, 114 F.3d 181, 183 (11th Cir. 1997).

Carson's conduct that led to these allegations arose in the brief period of time between, Carson and Bennett picking Koger up from the ground, escorting him to

3

the back of the vehicle, and striking Koger five times. (Exhibit N, Cook Dashcam, and Exhibit J, Cannon Dashcam, 23:13:50-23:14:24). Carson testified that he told Koger "to get his fat ass up" prior to mercilessly striking Koger. (Exhibit H, Carson Depo., p 16, ln 7-11). Koger was marched to the back of the patrol car. (Exhibit H, Carson Depo., p 16, ln 10-17). Carson testified in his deposition that he punched Koger in the back twice. (Exhibit H, Carson Depo., p 16, ln 17-25 and p 17, ln 1-7). Carson then elbowed Koger in the lower back, causing Koger's knees to buckle. (Exhibit H, Carson Depo., p 39, ln 19-23). The buckling of Koger's knees led Carson to believe that Koger was done resisting. (Exhibit H, Carson Depo., p 39, ln 19-23). Carson then, with fight momentum, executed an additional elbow strike to Koger. (Exhibit H, Carson Depo., p 39, ln 19-23). Then according to Carson, Koger resumed resisting during the pat down. (Exhibit H, Carson Depo., p 18, ln 8-22). Deputy Todd Cook (hereinafter Cook) testified at deposition that he did not observe Koger resisting. (Exhibit I, Cook Depo. p 17, ln 19-25 and p 18, ln 1-23). During the pat down, Carson performed an uppercut motion between Koger's spread legs towards Koger's groin. (Exhibit H, Carson Depo., p 18, ln 8-22). Koger was lifted onto the trunk of the patrol car. Upon conclusion of the search, Koger slid off the trunk. (Exhibit H, Carson Depo., p 18, ln 8-22). During this time Koger was screaming that he could not breathe. (Exhibit H, Carson Depo., p 18, ln 3-13). Carson was not in fear for his life during this incident. (Exhibit H, Carson Depo., p

52 ln 9-25). During this time, an officer can be heard stating what Koger contends to be "right in the groin!", or in the words of Carson, "right in the gourd!", which Carson understood as a threat to shoot Koger in the head. (Exhibit H, Carson Depo., p 40, ln 7-19). Carson was not aware of Koger's criminal history or gang affiliation at the time of the use of force. (Exhibit H, Carson Depo., p 15, ln 14-19).

Pursuant to *Ferraro*, the Court should review the use of force to determine whether the force used was reasonable by considering the severity of the crime, the danger to the officer, and risk of flight. First, as to the severity of the crime, the only crime that was known to Carson at the time of the use of force, was that Koger had been involved in a routine traffic stop resulted in a high speed pursuit, and perhaps the presence of a weapon. The presence high speed pursuit and presence of at least one firearm would give an officer reason to be wary. Second, the Court must consider the danger to the officer. When Carson arrived, Koger was face down on the ground with his hands cuffed behind his back. Carson was not in fear for his life at this time, or at any risk of harm. At this time, he was not resisting. Carson and Bennett proceeded to tell Koger to "get his fat ass up", pick him up off the ground, and march Koger to the back of the patrol car. Carson was not in fear for his life at this time either. Testimony at deposition suggests that Koger may or may not have been resisting at the back of the vehicle when Carson proceeded to buckle Koger's knees with two punches and an elbow to the back. Once Koger was compliant,

5

Carson proceeded to deploy an extra, well-placed, elbow to the target area. Carson was not in fear for his life at this time. Carson then executed his upper cut maneuver to the groin area of Koger, who was compliant and hand cuffed, all the while surrounded by numerous officers he could have asked for help. Third, Koger's risk of flight at the time was minimal. Despite the pursuit that lead to Koger being handcuffed, at the time of Carson's involvement, Koger was already detained, prone on the ground with his hands behind his back. Further at the back of the car, Koger was immediately surrounded by several law enforcement officers from multiple agencies, at least two of which had their hands on Koger. The likelihood of Koger's flight was minimal. F

Additionally, statements made by Carson to "get his [Koger's] fat ass up," and a statement that Koger asserts was made by or at least acquiesced by Carson regarding shooting Koger in the head, support Koger's argument that Carson was intentionally exceeding what was necessary to effectively restrain Koger. Carson lacked knowledge of Koger's criminal history, gang affiliation, combat training, or possession of methamphetamine at the time of the use of force, and therefore, in light of *Katz*, the Court should not consider facts of which Carson had no personal knowledge at the time of his attack on Koger.

Therefore, viewing the facts in light most favorable to the Plaintiff, it is apparent that genuine issues of material fact exist as to the reasonableness of the force deployed against Koger who was bound and screaming out in pain.

## II.  Qualified Immunity

When determining whether the defendant is entitled to qualified immunity, issues of material fact are resolved in favor of the plaintiff. *Alston*, at *6.  Officers are entitled to qualified immunity when acting in their discretionary authority unless the plaintiff establishes "that (1) the officer violated a constitutional right, and (2) the constitutional right was clearly established." *Id.*(citing *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010)). Two methods exist to show a constitutional right was clearly established: (1) showing a "materially similar case" that has already been decided against the officer; or (2) showing that the "officials conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Ferraro*, 284 F.3d at 1198-9. The second method can be used only when the law "inevitably lead[s] every reasonable officer in the defendant's position to conclude the force was unlawful." *Id.* at 1199. "A handcuffed, non-resisting defendant's right to be free from excessive force is clearly established." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *see also Stephens v. DeGiovanni*, 852 F.3d 1298 (11th Cir. 2017); *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014).

"[B]y 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002). Slamming a non-resisting criminal suspects head onto the hood of a car is excessive force. *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002).

It is clearly established that a handcuffed, non-resisting defendant has a constitutional right to be free from excessive force, and gratuitous force is excessive force. As stated above and in Plaintiff's Statement of Undisputed Material Facts, Carson stated that Koger was prone on the ground, hands cuffed behind his back when Carson approached with Bennett and pulled Koger to his feet to conduct a search at the back of the car. Carson told Koger to "get his fat ass up." Koger is then marched to the back of the car and bent over the trunk. Carson asserts, although Cook disagrees, that Koger was resisting. Carson then delivers two punches to Koger's lower back. Carson asserts that Koger was still resisting, so Carson delivered an elbow to Koger's lower back. Koger's knees buckled in response, and Carson believed Koger was no longer resisting. Carson believe Koger, who was still handcuffed, was no longer resisting when, "**just from momentum of being in a fight**", Carson delivers an extra elbow to Koger's lower back. Carson asserts that he then began his search and alleges that Koger began resisting again, Carson then performed an uppercut strike, or in Carson's words, "a lift", between Koger's spread

8

legs and into Koger's groin. It is important to note that none of the "resisting" that Carson cites as requiring a multiple punches, elbow strikes, and a strike to the groin, is visible on the video footage that records the entire encounter. Carson searched Koger, and then left Koger to slide off the trunk. At no point in time was Carson fearful for his life. Carson asserts the necessity to search for additional firearms but chose to move Koger from a place of admitted nonresistance and control, getting Koger to his feet to perform the search.

Furthermore, Looper testified that even if Koger had been resisting, a strike to the groin would have been excessive force. (Exhibit J, Looper Depo. p 57 ln 2-11; p 126 ln 8-12). Koger was controlled and defenseless." (Exhibit J, Looper Depo. p77 ln 1-15). The issue of a strike to the groin is even specifically addressed in the Hamilton County' Sheriff Department's Use of Force Policy, which provides that kicks to the groin o "are to be avoided unless the deputy's life or the life of another person is endangered." (Defendant's Exhibit B, P. 6 (Doc. 186-4).  Carson testified that he had training every year in the use of force, and that the use of force training was based upon Hamilton County's use of force policy. (Exhibit H, Carson Depo., p 11, ln 19-25). None of the officers who have given testimony in this case testified that the strike to Koger's groin was a compliance move they had ever seen taught at a training, and other than Carson, none of them had ever employed such a move themselves.

Applying the law to the facts of this case, there is sufficient testimony, even just from Carson, to support a denial of summary judgment. Koger was not resisting on the ground, and even at the back of the car, there is conflicting testimony about whether Koger was resisting, and even then there is conflicting testimony about whether the type of resistance Carson described would have been sufficient to warrant the type of force Carson applied. In Carson's own words Koger was elbowed in the lower back "**just from momentum of being in a fight**." This type of gratuitous violence against a handcuffed suspect violates law that was clearly established in the 11th Circuit by 1998, nearly twenty years before Koger was the victim of Carson's momentum.

## CONCLUSION

Genuine issues of material fact are present such that a rational trier of fact could find that Carson engaged in a pattern of escalating conduct to punish Koger for Koger's unlawful behavior prior to Carson's arrival. Koger was taken from a place of absolute control and nonresistance, on the ground in a handcuffed and prone position, so that Carson could allegedly establish absolute control at the rear of the car. When Carson's own testimony is taken into account, Carson admits to using physical violence against Koger after buckling Koger's knees and believing Koger would no longer resist. Carson then performed a move that he did not recall learning during his law enforcement training that involved a forceful and aggressive motion

10

upward between Koger's spread legs. For the entire duration of the unconstitutional beating, Koger was handcuffed, and Carson was not in fear for his life.

Therefore, this Court should deny the Motion for Summary Judgment as a Matter of Law and allow this matter to proceed to the jury to resolve the genuine issues of material fact relating to whether Carson's use of force was excessive.

Respectfully submitted,

BULLOCH, FLY, HORNSBY & EVANS PLLC

*/s/ Heather G. Parker*_____
LUKE A. EVANS, TN BPR #23620
HEATHER G. PARKER, TN BPR #30293
302 North Spring Street
Murfreesboro, Tennessee 37133-0398
(615) 896-4154
lukeevans@bfhelaw.com
heatherparker@bfhelaw.com


THE STANFORD LAW FIRM PLLC

*/s/ Christopher R. Stanford*_____
CHRISTOPHER R. STANFORD, TN BPR 26612
103 West High Street
Manchester, Tennessee 37355
(931) 954-5577
stanfordlawfirm@gmail.com

>/s/ Erin S. Corbett_____
>ERIN S. CORBETT, GA Bar 001288
>Bullard & Wangerin, LLP
>2960 RiversideDrive, Suite 280
>PO Box 18107
>Macon, GA 31209
>478-757-8500
>esmith@bgwlawfirm.com
>
>Attorneys for Plaintiff

## **CERTIFICATE OF FONT COMPLIANCE**

Counsel for Plaintiff hereby certifies on the 17th day of April, 2020 that the foregoing has been prepared with one of the font points elections approved by the Court in LR 5.1(B): Times New Roman (14 point).

>/s/ Heather G. Parker_____
>HEATHER G. PARKER

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of April, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and set forth below. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Bryan Hoss
850 Fortwood St.
Chattanooga, TN 37403

Gwendolyn Havlik
Stevan A. Miller
Drew, Eckl & Farnham
303 Peachtree Street NE, Suite 3500
Atlanta, GA 30308

Dana K. Maine

Kevin Stone
Freeman Mathis & Gary, LLP
10 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948

*/s/ Heather G. Parker*_____
HEATHER G. PARKER