IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

PHILLIP WAYNE KOGER,

    Plaintiff,

v.

DYLON FLOYD,
JAMES DAVIS,
STEPHEN BAGLEY,
GREGGORY CARSON,
TODD COOK, and
ANTHONY LAWSON,

    Defendants.

CIVIL ACTION FILE NO.
4:18-CV-0053-HLM

## ORDER

This case is before the Court on the Motion for Summary Judgment filed by Defendant Todd Cook ("Defendant Cook") [192].[1]

## I.   Background

### A.   Initial Matters

As required by the Local Rules, Defendant Cook filed a Statement of Material Facts in support of his Motion for Summary Judgment, which he later amended ("DSMF"). (DSMF (Docket Entry No. 195)[2].)  As also required by the

---

[1]      Defendant Greggory Carson ("Defendant Carson") also filed a Motion for Summary Judgment. (Def. Carson's Mot. Summ. J. (Docket Entry No. 186).)  Similarly, Defendants Stephen Bagley ("Defendant Bagley"), James Davis ("Defendant Davis"), and Dylon Floyd ("Defendant Floyd") filed a joint Motion for Summary Judgment. (Defs. Bagley, Davis, & Floyd's Mot. Summ. J. (Docket Entry No. 191).)      Finally, Defendant Anthonyh Lawson ("Defendant Lawson") filed a Motion for Summary Judgment. (Def. Lawson's Mot. Summ. J. (Docket Entry No. 188).)  The Court has addressed those Motions in separate Orders.

[2]      The Court cites to the amended version of DSMF in this Order.

Local Rules, Plaintiff filed a response to DSMF ("PRDSMF").

(PRDSMF (Docket Entry No. 209-2).)   As permitted by the

Local Rules, Plaintiff filed his own Statement of Additional

Material Facts ("PSAF") (Docket Entry No. 209-3), to which

Defendant Cook responded ("DRPSAF") (Docket Entry No.

227). The Court evaluates DSMF, PRDSMF, PSAF, and

DRPSAF infra.

### B.  Factual Background

Keeping in mind that, when deciding a motion for

summary judgment, the Court must view the evidence and all

factual inferences in the light most favorable to the party

opposing the motion, the Court provides the following

statement of facts.  Strickland v. Norfolk S. Ry. Co., 692 F.3d

1151, 1154 (11th Cir. 2012).   This statement does not

represent actual findings of fact.  Rich v. Sec'y, Fla. Dep't of

Corr., 716 F.3d 525, 530 (11th Cir. 2013).  Instead, the Court

has provided the statement simply to place the Court's legal analysis in the context of this case or controversy.

### 1.  The Parties

Plaintiff is currently in the custody of the Federal Bureau of Prisons. (Dep. of Pl. (Docket Entry No. 186-5) at 6.)[3] Plaintiff is approximately six feet, two inches tall and weighs 250 pounds. (Id. at 125.)  Defendant Cook has worked for the Hamilton County Sheriff's Office (the "HCSO") for twenty-four years, and currently serves as a traffic investigator.  (DSMF ¶ 1; PRDSMF ¶ 1.)

---

[3]    The Court agrees with Plaintiff that DSMF ¶¶ 87-89, which relate to criminal proceedings brought against Plaintiff as a result of the chase at issue in this case, are largely immaterial for purposes of the instant Motion.  (PRDSMF ¶¶ 87-89.)

### 2.   The Pursuit[4]

At 10:56 p.m. on March 8, 2017, Deputy Brandon Bennett

of the Hamilton County Sheriff's Office initiated a traffic stop

of a white Camaro driven by Plaintiff.  (DSMF ¶ 13 (Plaintiff's

materiality objection overruled).)   Plaintiff admits that his

Camaro had no license tag and that one of the Camaro's

headlights was not working.  (Id. ¶ 15 (Plaintiff's materiality

objection overruled).)  Plaintiff does not dispute that the stop

---

[4]   Plaintiff objects to DSMF ¶¶ 2-12, which relate to Plaintiff's activities earlier in the day of his arrest and Plaintiff's drug dealing, as immaterial. (PRDSMF ¶¶ 2-12.)  The Court finds that these proposed facts, although perhaps entertaining, are not material for the instant Motion, and it excludes the proposed facts.

Plaintiff also objects to DSMF ¶¶ 13-36, which relate to a high-speed pursuit of Plaintiff's vehicle, the related stop, and attempts to handcuff Plaintiff, as immaterial. (PRDSMF ¶¶ 13-36.) The Court finds that the proposed facts, with the exception of DSMF ¶ 14, are relevant for providing background information and context for the officers' interactions with Plaintiff at the scene, and it overrules Plaintiff's materiality objections and deems DSMF ¶¶ 13 and 15-36 admitted.

was proper.   (Id. ¶ 16 (Plaintiff's materiality objection overruled).)

Plaintiff initially pulled over at a nearby gas station, but then quickly left with Deputy Bennett following him.  (DSMF ¶¶ 17-18 (Plaintiff's materiality objections overruled).)  Plaintiff led Deputy Bennett on a chase that reached speeds of up to ninety miles per hour.  (Id. ¶ 19 (Plaintiff's materiality objection overruled).)  During the chase, Plaintiff's vehicle spun out, and Plaintiff restarted the engine and sped away to continue the chase.  (Id. ¶ 19 (Plaintiff's materiality objection overruled).)

Defendant Cook entered the chase around Highway 41 in Catoosa County, Georgia.   (DSMF ¶ 20 (Plaintiff's materiality objection overruled).)  At approximately 11:10 p.m., and while Defendant Cook was present, the officers deployed spike strips to attempt to stop Plaintiff.  (Id. ¶¶ 22-23 (Plaintiff's materiality objections overruled).)  Plaintiff, however, avoided

6

the spike strips.   (Id. ¶ 24 (Plaintiff's materiality objection overruled).)  Approximately three minutes later, with multiple agencies pursuing him, Plaintiff struck a culvert, ran out of gas, was pushed into a guardrail, and was struck by another car to end the chase.   (Id. ¶ 24 (Plaintiff's materiality objection overruled).)  Plaintiff was not wearing a seatbelt.  (Id. ¶ 25 (Plaintiff's materiality objection overruled).)   Plaintiff  put his hands outside the window and then quickly pulled them back inside the car.  (Id. ¶ 26 (Plaintiff's materiality objection overruled).)

### 3.   The Struggle to Place Plaintiff in Handcuffs

Deputy Bennett approached the driver's side door of Plaintiff's vehicle.  (DSMF ¶ 27 (Plaintiff's materiality objection overruled).)  Deputy Bennett noticed Plaintiff turn toward the vehicle's center console and saw the backstrap of a handgun. (Id. (Plaintiff's  materiality  objection  overruled).)   Deputy

7

Bennett had already holstered his service weapon, and he told Plaintiff, "Give me your hands." (Id. ¶ 28 (Plaintiff's materiality objection overruled).) Deputy Bennett delivered a knee strike to Plaintiff's head, and he pulled Plaintiff from the vehicle. (Id. ¶ 29 (Plaintiff's materiality objection overruled).) Several other officers helped pull Plaintiff from the vehicle and placed him on the ground. (Id. ¶ 30 (Plaintiff's materiality objection overruled).) According to Plaintiff, he was kicked in the head, and the next thing he remembers is waking up in the hospital. (Id. ¶ 31 (Plaintiff's materiality objection overruled); PSAF ¶ 46; DRPSAF ¶ 46; see also DSMF ¶ 38 (noting that Plaintiff claims to remember nothing after being handcuffed; Plaintiff's materiality objection overruled).)

Defendant Cook arrived on the scene, noticed a gun on the ground next to Plaintiff, and alerted the other officers of the gun's presence. (DSMF ¶ 33 (Plaintiff's materiality objection

overruled).) Defendant Cook recalls that Plaintiff was resisting the officers' efforts to handcuff him by lying on his hands. (Id. (Plaintiff's materiality objection overruled).) Plaintiff was not complying with officers' instructions. (Id. ¶ 32 (Plaintiff's materiality objection overruled).) According to the officers, Plaintiff was on the ground struggling with the officers as they attempted to place him in handcuffs. (Id. ¶¶ 34-35.)

Defendant Davis administered baton strikes to Plaintiff's legs to attempt to stop Plaintiff from resisting. (DSMF ¶ 35 (Plaintiff's materiality objection overruled).) The officers eventually handcuffed Plaintiff by using two sets of handcuffs linked together. (DSMF ¶ 37; PRDSMF ¶ 37; see also PSAF ¶ 3 (noting that numerous officers were involved in handcuffing Plaintiff outside his vehicle); DRPSAF ¶ 3.) Plaintiff had more freedom of movement with his hands

9

because he was double handcuffed.  (DSMF ¶ 43; PRDSMF ¶ 43.)[5]

### 4.   Defendant Carson's Struggle with Plaintiff

Defendant Carson[6] arrived approximately two minutes after the crash, and observed Plaintiff lying face down in some rubble and glass.  (PSAF ¶ 13; DRPSAF ¶ 13.)  Defendant Carson believed that there was a gun on the ground.  (PSAF ¶ 13; DRPSAF ¶ 13.)

According to Deputy Bennett, Plaintiff had not been searched.  (Dep. of Brandon Bennett (Docket Entry No. 186-9) at 50.)  Defendant Carson stated that an officer never takes

---

[5]    The Court excludes PSAF ¶¶ 4-5 as immaterial.

[6]    Defendant Carson is employed as a sergeant with the HCSO, and he has been employed with the HCSO for at least eighteen years.  (PSAF ¶ 8; DRPSAF ¶ 8.)  Defendant Carson receives yearly use of force training based on the HCSO's use of force policy, and he is familiar with that policy.  (PSAF ¶ 9; DRPSAF ¶ 9.)  The Court excludes PSAF ¶¶ 1-2 as unsupported and as immaterial for purposes of the instant Motion.

for granted that a suspect has been searched, and he was not aware whether Plaintiff had been searched. (DSMF ¶ 44; PRDSMF ¶ 44.)

Defendant Carson and another officer picked Plaintiff up and told him "to get his fat ass up." (PSAF ¶ 14; DRPSAF ¶ 14.) Defendant Carson and Deputy Bennett began walking Plaintiff to the back of Deputy Bennett's vehicle. (DSMF ¶ 39; PRDSMF ¶ 39.) Defendant Carson and Deputy Bennett used a "high escort" position, in which they bent Plaintiff over, to walk Plaintiff to the back of the vehicle. (DSMF ¶ 40; PRSMF ¶ 40.) Plaintiff attempted to do a "stiffwalk," in which he appeared to walk backward and resist. (DSMF ¶ 41 (Plaintiff's materiality objection overruled); PSAF ¶ 15; DRPSAF ¶ 15.)[7]

---

[7]    Plaintiff's expert witness, Patrick Looper, testified that, simply because a suspect is handcuffed, that does not necessarily mean that the suspect is under control, and the suspect could still pose a threat to officers. (DSMF ¶ 42; DRPSMF ¶ 42.) Mr. Looper had

Defendant Carson contends that, when the officers reached the trunk of the patrol car, he informed Plaintiff that he was going to search him, and Plaintiff began jerking away and resisting. (DSMF ¶ 47; PRDSMF ¶ 47 (not disputing that Defendant Carson gave this testimony, but contending that Plaintiff was not resisting).) Defendant Carson was on Plaintiff's left, while Deputy Bennett was on his right. (DSMF ¶ 49; PRDSMF ¶ 49.) Deputy Jason Smith was also at the back of the vehicle with Plaintiff, Deputy Bennett, and Defendant Carson. (PSAF ¶ 6; DRPSAF ¶ 6.)[8] The officers had Plaintiff bent over the trunk of Deputy Bennett's vehicle to

---

no issues with the use of the high escort position. (PSAF ¶ 39; DRPSAF ¶ 39.) Mr. Looper agreed with Defendants' expert that "when the offender ceases resisting, the officer stops the pain." (PSAF ¶ 36; DRPSAF ¶ 36.) According to Mr. Looper, excessive force is more force that is necessary to effect an arrest. (PSAF ¶ 37; DRPSAF ¶ 37.)

[8]    The Court excludes PSAF ¶ 7 as unsupported.

search Plaintiff for further weapons and contraband.  (DSMF ¶ 50; PRDSMF ¶ 5) (not disputing that Defendant gave this testimony).)  According to Defendant Carson, Plaintiff resisted and acted as though he was high on methamphetamine. (Carson Dep. at 32.)  Defendant Carson and Deputy Bennett recalled that, as Deputy Bennett tried to keep Plaintiff bent over the car, Plaintiff raised up and pulled Deputy Bennett off the ground.  (Carson Dep. 16-17; Dep. of Brandon Bennett (Docket Entry No. 186-9) at 24.)  Other officers testified that they saw Plaintiff resisting while Plaintiff was at the trunk of the car.  (Dep. of Dylon Floyd (Docket Entry No. 186-15) at 13 (stating that Plaintiff was jerking around and twisting at the back of the car); Dep. of Jason Smith (Docket Entry No. 186-14) (testifying that Plaintiff was pulling his legs away and shielding his waist while Defendant Carson tried to search him).)  Plaintiff, for his part, points to testimony from Defendant

13

Cook to show that he did not appear to be resisting at the back of the patrol car. (Dep. of Todd Cook (Docket Entry No. 186-20) at 18.)

Defendant Carson delivered two closed-fist punches to Plaintiff's back. (DSMF ¶ 55; PRDSMF ¶ 55; PSAF ¶ 16; DRPSAF ¶ 16.) According to Defendant Carson, Plaintiff thrust out his hips and attempted to stand up again. (Carson Dep. at 16-17.) Defendant Carson administered two elbow strikes to Plaintiff's low back. (DSMF ¶ 57; PRDSMF ¶ 57 (not disputing that Defendant Carson delivered two elbow strikes to Plaintiff's back to gain control); PSAF ¶ 16; DRPSAF ¶ 16.) Defendant Carson's two punches and two elbow strikes occurred over an eight-second period. (DSMF ¶ 58; PRDSMF ¶ 58.) Plaintiff, for his part, contends that his knees buckled after the first elbow strike. (PSAF ¶ 24 (citing Defendant Carson's testimony that the first elbow strike buckled Plaintiff's

14

knee, indicating that he might be done fighting, and that the second one was from the momentum of being in a fight); DRPSAF ¶ 24.)

Defendant Carson began searching Plaintiff's ankles and working his way up, and he testified that Plaintiff thrust his hips out and tried to raise his torso off the trunk against the officers. (Carson Dep. at 60-61, 66-67.)   According to Defendant Carson, he placed one hand in front of Plaintiff's groin and the other on Plaintiff's left hip, and he pushed Plaintiff onto the trunk so that he could complete the search.  (Id. at 17; see also PSAF ¶ 17 (noting that Defendant Carson scooped up Plaintiff with one hand between Plaintiff's legs and picked Plaintiff up onto the trunk of the car); DRPSAF ¶ 17.)  Plaintiff contends that he was not resisting.   (Cook Dep. at 18.) Plaintiff also contends that Defendant Carson used a forceful upper cut motion toward his groin.  Plaintiff testified, however,

that he could not say definitively that he was not resisting. (DSMF ¶ 78; PRDSMF ¶ 78.)[9]

The entire altercation at the back of the vehicle took place over approximately twenty-five seconds, with a gap between the strikes and the groin lift.  (DSMF ¶ 66; PRDSMF ¶ 66.)[10] Defendant Carson testified that, after the pat down, Plaintiff

---

[9]   The Court excludes PSAF ¶¶ 18-20 as argumentative.  The Court excludes PSAF ¶ 22 as unsupported, and it excludes PSAF ¶¶ 25-28 as immaterial.   The Court excludes PSAF ¶ 32 as immaterial.  The Court further excludes PSAF ¶¶ 33, 35, 40-42, and 44, which relate to Plaintiff's expert's comments relating to videos of the incident, because the videos are the best evidence of the incident.  The Court excludes PSAF ¶¶ 38, 43, and 45 as improper conclusions.

[10]   The Court sustains Plaintiff's materiality objections to DSMF ¶¶ 69-76, which relate to Plaintiff's training in Brazilian jiu jitsu, his mixed martial arts experience, and his gang membership and activities.  (PRDSMF ¶¶ 69-76.)  The officers were not aware of those factors when they engaged with Plaintiff.  (See PSAF ¶ 11 (noting that Defendant Carson did not know Plaintiff and had not interacted with him before the incident at issue in this Motion); DRPSAF ¶ 11; see also PSAF ¶ 12 (stating that Defendant Carson "did not know of [Plaintiff's] criminal history or gang affiliation at the time of the stop") (Defendant Cook's materiality objection overruled).)

16

"slid off the other side" of the trunk.  (PSAF ¶ 21; DRPSAF ¶ 21.)

The dash camera video from Michael Cannon's vehicle depicts the incident at the back of the patrol car.  (Pl.'s Ex. M; PSAF ¶ 57; DRPSAF ¶ 57.)  The dash camera video from Jason Smith's vehicle shows a limited view of the incident. (Pl.'s Ex. E; PSAF ¶ 59; DRPSAF ¶ 59.)  The dash camera video from Defendant Davis's car depicts the incident from farther away.  (Pl.'s Ex. P, Dash Camera Video of Defendant Davis; PSAF ¶ 61; DRPSAF ¶ 61.)  Plaintiff also presented the dash camera video from Defendant Cook's vehicle, which depicted Plaintiff's initial takedown and handcuffing, as well as a limited view of the incident at the back of the patrol car. (Pl.'s Ex. N, Dash Camera Video of Defendant Cook; PSAF ¶ 58; DRPSAF ¶ 58.)  The videos depict Defendant Carson delivering two punches to Plaintiff, followed by two elbow

strikes.  (Pl.'s Ex. N at 23:15:47, 23:15:49, 23:15:52, 23:15:55; Pl.'s Ex. P at 23:13:58, 23:13:03, 23:14:07; Pl.'s Ex. M at 23:13:56-23:14:04.)  At least one of the videos indicates that Plaintiff was wriggling when Defendant Carson delivered the first punch, and that Plaintiff's knees buckled after the first elbow strike.  (Pl.'s Ex. M at 23:13:56--23:14:04.) The videos also depict Defendant Carson lifting Plaintiff by some manner involving grabbing him between his legs and heaving him onto the patrol car's trunk.  (Pl.'s Ex. N at 23:16:12; Pl.'s Ex. P at 23:14:20; Pl.'s Ex. M at 23:14:21.)  With all due respect to the Parties, none of the videos clearly depict whether Plaintiff was resisting when Defendant Carson lifted him onto the trunk. The entire incident lasted less than a minute, with approximately twenty-five to thirty seconds elapsing between Defendant Carson's first strike and his heaving Plaintiff onto the patrol car's trunk.  (Pl.'s Ex. N at 23:15:41--23:16:12; Pl.'s

18

Ex. P at 23:13:53--23:14:20; Pl.'s Ex. M at 23:13:50--23:14:21.)

### 5.   Defendant Cook's Involvement

Defendant Cook was familiar with the HCSO's use of force policy. (PSAF ¶ 29; DRPSAF ¶ 29.) Defendant Cook testified that he was approximately twenty feet away when Defendant Carson struck Plaintiff. (DSMF ¶ 82; PRDSMF ¶ 82 (not disputing that Defendant Cook gave this testimony).) Defendant Carson was not aware where Defendant Cook was during the events at the trunk of the patrol car, but he believed that there was no opportunity for Defendant Cook to intervene because Defendant Carson was on Plaintiff's left while Deputy Bennett was on Plaintiff's right. (Carson Dep. at 62-64.) Defendant Cook believed that the officers who had hands on Plaintiff were in the best position to determine the amount of

19

force that was necessary and whether Plaintiff was resisting. (Cook Dep. at 66-67.)[11]

Defendant Cook initially testified that Plaintiff was not resisting. (Cook Dep. at 18.)  Defendant Cook later testified that he observed Plaintiff "offering a little resistance." (Id. Dep. at 65-66.)  Defendant Cook stated that the officers with hands on Plaintiff were in the best position to judge whether Plaintiff was resisting.  (Id. at 67.)

### 6.   Medical Treatment

Plaintiff was transported to an area hospital and eventually was transferred to Erlanger Medical Center in Chattanooga, Tennessee for treatment.  (Pl.'s Ex. L (Docket

---

[11]   Defendant Cook proffered an affidavit stating that he was not close enough to intervene and that the strikes were quick and afforded him no opportunity to intervene.  (Aff. of Todd Cook (Docket Entry No. 192-12) ¶¶ 3-4.)  Both of those statements, however, are legal conclusions for the Court, and the Court therefore does not consider the statements.

Entry No. 207-11) at 10-12.)   Plaintiff claimed that he

sustained injuries to his neck, back, scrotum, and knee.  (Pl.

Dep. at 160-62; PSAF ¶¶ 54-56 (Defendant Cook's materiality

objections overruled).)   Plaintiff's medical records do not

indicate that he sustained a ruptured testicle or required

emergency surgery.[12]  (See Pl.'s Ex. L at 19 (noting that

Plaintiff had decreased color flow to his left testicle), 40

(diagnosing Plaintiff with a scrotal contusion and stating that a

---

[12]   Plaintiff objects to DSMF ¶¶ 96-99, which relate to federal court criminal proceedings against Plaintiff, as immaterial. (DSMF ¶¶ 96-99.)  The Court agrees with Plaintiff that those proposed facts are not material for purposes of the instant Motion.  The Court excludes the facts other than to note for background purposes that Plaintiff eventually pleaded guilty to a federal criminal indictment charging him with conspiracy to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime, that Plaintiff is currently serving a federal prison sentence related to those charges, and that those charges arose in part from the evidence discovered as a result of the police chase at issue in this case.  (Def. Carson's Ex. D (Docket Entry No. 186-6); Def. Carson's Ex. E (Docket Entry No. 186-7); Def. Carson's Ex. F (Docket Entry No. 186-8); Pl. Dep. at 54.)

consultation with urology revealed that Plaintiff did not need emergent surgical intervention for his testicle), 58 (same).)[13]

## C.  Procedural Background

The Court incorporates the procedural background portions of its earlier Orders into this Order as if set forth fully herein, and it adds only those background facts that are relevant to the instant Motion.  (Order of July 5, 2018 (Docket Entry No. 55); Order of Aug. 23, 2018 (Docket Entry No. 83); Order of Sept. 17, 2018 (Docket Entry No. 91); Order of Oct. 15, 2018 (Docket Entry No. 96); Order of Dec. 6, 2018 (Docket Entry No. 112); Order of Mar. 25, 2019 (Docket Entry No. 137); Order of Nov. 13, 2019 (Docket Entry No. 176).)  On March 30, 2020, Defendant Cook filed his Motion for Summary Judgment.  (Def. Cook's Mot. Summ. J. (Docket Entry No.

---

[13]    The Court excludes PSAF ¶¶ 51-53 as immaterial.

22

192).)  The briefing process for that Motion is complete, and the Court finds that the matter is ripe for resolution.

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) allows a court to grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record.  Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012).  Once the moving party has supported its motion adequately, the burden shifts to the non-movant to rebut that showing by coming forward with specific evidence that demonstrates the existence of a genuine issue for trial.  Id.

23

When evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable factual inferences in the light most favorable to the party opposing the motion.  Morton v. Kirkwood, 707 F.3d 1276, 1280 (11th Cir. 2013); Strickland, 692 F.3d at 1154.  The Court also must "resolve all reasonable doubts about the facts in favor of the non-movant." Morton, 707 F.3d at 1280 (internal quotation marks and citations omitted).  Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented.  Strickland, 692 F.3d at 1154.  Finally, the Court does not make factual determinations. Rich, 716 F.3d at 530.

## III.   Discussion

### A.   Failure to Intervene

Plaintiff asserts a § 1983 claim against Defendant Cook, alleging that Defendant Cook failed to intervene to prevent Defendant Carson's use of excessive force against Plaintiff. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Crenshaw v. Lister, 556 F.3d 1283, 1293-94 (11th Cir. 2009) (per curiam) (internal quotation marks and citation omitted). An officer has no obligation to intervene, however, if the force used by the other officer is not excessive.  Id. at 1294; see also Bussey-Morice v. Kennedy, 657 F. App'x 909, 915 (11th Cir. 2016) (per curiam) ("In the absence of excessive force, no duty to intervene exists.").  "Similarly, when an officer's force does not violate a clearly established right, other officers'

25

failure to intervene does not violate a clearly established right."

Bussey-Morice, 657 F. App'x at 915.

For an officer to be liable for failure to intervene, the officer must be in a position to intervene but fail to do so. Jackson v. Sauls, 206 F.3d 1156, 1174 (11th Cir. 2000). "Whether the officer had time to intervene is a relevant consideration." Marantes v. Miami-Dade Cty., 649 F. App'x 665, 672 (11th Cir. 2016) (per curiam). Generally, "[i]nstances of force that occur within seconds do not place officers in a realistic position to intervene." Johnson v. White, 725 F. App'x 868, 878 (11th Cir. 2018) (per curiam).

Defendant Cook contends that Defendant Carson used only reasonable and necessary force against Plaintiff. For the reasons discussed in the Court's Order addressing Defendant Carson's Motion for Summary Judgment, a genuine dispute remains as to whether Defendant Carson used excessive

26

force against Plaintiff, and Defendant Carson is not entitled to summary judgment in his favor based on qualified immunity. The Court therefore cannot grant summary judgment to Defendant Cook based on this argument.

Alternatively, Defendant Cook argues that he was not in a position to intervene. Even viewing all of the evidence in the light most favorable to Plaintiff, Defendant Carson used punches and elbow strikes against Plaintiff without warning and in rapid succession, and he used force to lift Plaintiff onto the trunk of the patrol car suddenly and without warning. Further, at least three officers surrounded Plaintiff when Defendant Carson used force against Plaintiff, and the whole sequence of events occurred in approximately twenty-five seconds. Nothing indicates that Defendant Cook, who was twenty feet away, had sufficient time to force his way between the officers surrounding Plaintiff to prevent the use of force.

27

Given that the scene was chaotic and loud, it is not clear that any verbal command that Defendant Cook may have issued would have prevented Defendant Carson's use of force. Under those circumstances, Defendant Cook cannot be liable to Plaintiff for an alleged failure to intervene because he did not have an opportunity to intervene.  See Johnson, 725 F. App'x at 878 (finding no duty to intervene where "the whole incident lasted only a few seconds and evolved rapidly"); Marantes, 649 F. App'x at 672 (affirming the dismissal of a failure to intervene claim where, drawing all reasonable inferences in the plaintiff's favor, it appeared that the officer who used force kicked the plaintiff "four times in rapid succession without warning, which would leave insufficient time for any of the other officers to issue a verbal command or physically prevent [that officer] from that kicking"); Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam)

(finding that an officer was not liable for failing to intervene to stop another officer from kicking the plaintiff where the plaintiff presented no evidence that the officer had the ability "to reasonably insert himself between [the other officer] and [the] plaintiff to stop the assault without additional help"); Crane v. Fort, Case No. 5:15-CV-00345-CAR-CHW, 2016 WL 8678447, at *10 (M.D. Ga. Nov. 4, 2016) (finding that officers were not liable for failing to intervene to stop another officer from firing a pepper-ball gun at the plaintiff, even though the officers were all within arms' length of that officer, where "the events happened quickly during a period of approximately thirty seconds").   The Court therefore grants Defendant Cook's Motion for Summary Judgment.

## B.   Qualified Immunity

Alternatively, Defendant Cook asserts the defense of qualified immunity.  Qualified immunity protects government

officials performing discretionary functions from suits for damages brought against them in their individual capacities. Morris v. Town of Lexington, Ala., 748 F.3d 1316, 1321 (11th Cir. 2014).  The Eleventh Circuit applies a two-part analysis to determine whether a defendant is entitled to qualified immunity.  Id. at 1322.

Under the qualified immunity analysis used in this Circuit, the defendant first must prove that the allegedly unconstitutional conduct occurred while the defendant official was acting within the scope of the official's discretionary authority.  Penley v. Eslinger, 605 F.3d 843, 849 (11th Cir. 2010).  To determine whether the defendant acted within her discretionary authority, the Court asks "whether the [defendant] was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [the defendant's] power to utilize."

<u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).[14]

Once a defendant shows that he or she acted within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the defendant's conduct violated the plaintiff's constitutional rights and (2) that the constitutional rights violated were "clearly established when the defendant committed the act complained of." <u>Morris</u>, 748 F.3d at 1322 (internal quotation marks and citation omitted); <u>see also</u> <u>Penley</u>, 605 F.3d at 849 ("Once the defendant establishes that

---

[14]    In making this determination, the Court does not inquire "whether it was within the defendant's authority to commit the allegedly illegal act." <u>Holloman ex rel Holloman</u>, 370 F.3d at 1266 (internal quotation marks omitted).  Instead, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." <u>Id.</u>

he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." (internal quotation marks and citation omitted)). The qualified immunity inquiry can begin with either prong. Morris, 748 F.3d at 1322. If the plaintiff fails to make either of those showings, however, then the defendant is entitled to qualified immunity. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010); see also Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1298 (11th Cir. 2003) (finding that defendants were entitled to qualified immunity based on plaintiff's failure to allege constitutional violation).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [individual in the defendant's position] that his conduct was unlawful in the situation he confronted." Morris, 748 F.3d at 1322 (emphasis in original) (internal quotation

32

marks and citation omitted).  Although a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, existing precedent must have placed the statutory or constitutional question beyond debate."  <u>Id.</u> (internal quotation marks and citation omitted).  A plaintiff may demonstrate that a right is clearly established by proceeding in one of three ways:

> First, [the plaintiff] may show that "a materially similar case has already been decided."  Second, [the plaintiff] can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation."  Finally, the conduct involved in the case may "so obviously violate[] th[e] constitution that prior case law is unnecessary."  Under controlling law, [the plaintiff] must carry [his] burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [Georgia] Supreme Court.

<u>Id.</u> (some alterations in original) (quoting <u>Terrell v. Smith</u>, 668 F.3d 1244, 1255 (11th Cir. 2012)).

Here, Defendant Cook acted in his discretionary authority during the events that gave rise to this lawsuit. See Johnson v. White, 725 F. App'x 868, 878 (11th Cir. 2018) (per curiam) (concluding that "deputies were clearly operating under their discretionary authority" in the course of arresting a suspect). The Court next determines whether Defendant Cook violated clearly established law.

Even if Defendant Cook could be liable for failing to intervene to prevent Defendant Carson's use of force, the Court cannot find that Defendant Cook violated clearly established law. No preexisting controlling authority would have placed Defendant Cook clearly on notice that failing to intervene was unlawful under the circumstances of this particular case. Defendant Cook therefore is entitled to qualified immunity, and the Court grants Defendant Cook's Motion for Summary Judgment.

## IV.  Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant Cook's Motion for Summary Judgment [192], and **DISMISSES** Plaintiff's failure to intervene claim against Defendant Cook.

IT IS SO ORDERED, this the 11 day of May, 2020.

_____

SENIOR UNITED STATES DISTRICT JUDGE

35